Filed 6/27/24  Kunz v. County of Solano CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| MELISSA KUNZ,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF SOLANO et al.,<br><br>　　　　Defendants and Respondents. | A164853<br><br><br>(Solano County<br>Super. Ct. No. FCS052527) |

　　　　This is an appeal from final judgment after a jury rejected plaintiff Melissa Kunz's claims of sexual harassment, discrimination, failure to accommodate and wrongful termination, among others, against defendants County of Solano (County) and Sergeant Jason Speakman.  Before being terminated, plaintiff was employed as a public safety dispatcher for the Solano County Sheriff's Office, where her alleged harasser, Speakman, was employed in a superior role.  In reaching a defense verdict, the jury accepted defendants' position that plaintiff willingly engaged in sexual communications with Speakman and after taking medical leave for emotional distress failed to provide a timeline for returning to work such that her leave was unreasonably indefinite.

　　　　Plaintiff seeks reversal of the judgment on grounds of juror misconduct, instructional error, and inconsistent and erroneous evidentiary rulings.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2011, plaintiff was hired as a public safety dispatcher with the Solano County Sheriff's Office.  Plaintiff took a great deal of pride in her work and was honored as dispatcher of the year in 2015.

As a dispatcher, plaintiff regularly took orders from those in the position of sergeant, including Speakman.  Plaintiff also worked with Speakman's wife, S.S., a fellow dispatcher who later became one of plaintiff's supervisors.

Although their relationship was initially platonic, Speakman instigated a "game" with plaintiff wherein the pair began exchanging sexual communications by text messaging (sexting).  These mutual communications sometimes involved sharing sexually explicit photos and videos, including a video of Speakman masturbating and photos of plaintiff's breasts and buttocks.

As the year passed, plaintiff became increasingly uncomfortable and "ashamed" of their sexting relationship.  Plaintiff began suffering anxiety, depression and panic attacks.  Finally, in January 2018, plaintiff switched from the day shift to the night shift because she "did not want to be around him any longer."

In July 2018, plaintiff's husband confronted plaintiff after discovering her sexual communications with Speakman.  Plaintiff acknowledged her sexting relationship with Speakman, describing it as unwanted harassment.  On her husband's recommendation, the couple complained to the sheriff's office that Speakman was sexually harassing her.  Plaintiff told Captain B.D. that she was concerned about returning to the dispatch center because, at the time, Speakman's wife was her supervisor.  Based on plaintiff's complaint,

the County placed Speakman on administrative leave and began an investigation.

In November 2018, plaintiff received the County's administrative investigation finding, which sustained her allegation of sexual harassment. The County disciplined Speakman for his conduct, but he was later permitted to return to his previous position. Plaintiff, in turn, went on a medical leave of absence.

Plaintiff's initial medical leave was from July 16, 2018, to October 9, 2018. She then requested and received additional leave through November 28, 2018. When her second period of leave expired, plaintiff again requested more time, which prompted the County to schedule a meeting for January 17, 2019. At this meeting, the County advised plaintiff she must return to work, medically retire, or terminate her employment. The County also imposed a February 1, 2019 deadline for plaintiff to submit medical certification regarding her ability to resume working.

On February 11, 2019, plaintiff informed the County that a psychiatrist, Dr. Ponton, had issued a report stating that she was unfit to resume work " 'until she obtains the necessary treatment.' " In this report, which plaintiff provided to the County, Dr. Ponton also opined plaintiff was suffering from major depressive disorder and posttraumatic stress disorder (PTSD), for which she would need "three years of one time per week psychotherapy." According to Dr. Ponton, "[plaintiff] has chronic PTSD, which will be re-triggered. She will be fearful and re-triggered when she returns to work. It is very important to address these symptoms. [¶] . . . In my medical opinion [plaintiff] is completely disabled from any employment until she obtains the necessary treatment."

3

Based on Dr. Ponton's report and plaintiff's corroborating statement, M.T., the County official tasked with deciding whether plaintiff could return to work with accommodation, recommended her termination. As such, the County issued plaintiff a written notice of separation effective on March 12, 2019, setting forth its understanding that plaintiff would not be fit to return to work until she obtained treatment that would likely last three years. Plaintiff neither appealed the County's decision nor informed the County that its understanding of Dr. Ponton's report was inaccurate.

In March 2019, plaintiff filed a civil complaint against the County and Speakman, asserting the following causes of action: (1) sexual harassment; (2) failure to prevent discrimination and harassment, against the County; (3 & 4) gender and disability discrimination, against the County; (5) failure to accommodate plaintiff's disability by refusing to extend her medical leave after March 1, 2019, against the County; (6) retaliation, against the County; (7) battery, against Speakman; (8) intentional infliction of emotional distress; and (9) wrongful termination in violation of public policy, against the County.

Trial began on September 16, 2021. Over a dozen witnesses testified, including plaintiff and her husband; Speakman and his wife, S.S.; defense expert Dr. Jacks; plaintiff's treating psychologist, Dr. Lopes; plaintiff's expert Dr. Ponton; Captain B.D.; and M.T.

Plaintiff testified that Speakman's sexting, which he instigated in the summer of 2017, was "unwelcomed." Plaintiff complied with Speakman's sexting demands because her job was important to her and she feared losing it. Although she was embarrassed and ashamed, plaintiff believed she had "very limited options" to decline his requests. According to plaintiff, Speakman would stand over her work console, gesturing toward their phones to encourage her to check her texts. Plaintiff also accused Speakman of once

4

grabbing her at work and attempting to pull her toward him. As time passed, plaintiff found his conduct "very stressful," to the point of interfering with the quality of her work. She began having panic attacks and making "blatant, stupid mistakes . . . ." Plaintiff described calling her husband in tears, wanting to come home.

Plaintiff eventually switched to night shifts to avoid Speakman. However, while his texts lessened, they did not stop. The fact that Speakman still texted upset plaintiff more, and by 2018, she was experiencing gastrointestinal issues, frequent severe migraines, weight gain and hair loss.

Plaintiff acknowledged that either Dr. Lopes, her treating psychologist, or Dr. Ponton, the psychiatrist hired by her attorneys, told her she could not work for at least three years. For this reason, plaintiff did not appeal the County's notice of separation or advise the County that Dr. Ponton's finding was inaccurate or misstated.

Speakman, in turn, testified that his and plaintiff's sexting relationship was "consensual." When Speakman first met plaintiff in 2011, he was just a deputy sheriff, separated from his first wife, and he believed plaintiff was single. Their relationship began with friendly texting and only later became sexual, in approximately 2012. After Speakman married S.S. in 2014, he continued sexting with plaintiff.

Speakman denied having any supervisory responsibilities over plaintiff, threatening her with repercussions for not sexting with him, and grabbing her. In fact, prior to 2018, plaintiff never protested to him about their sexting and, on multiple occasions, requested that he send her sexual photographs. Twice between 2016 and 2018, plaintiff stopped by his house and they briefly hugged and kissed. He only learned of plaintiff's

5

protestations in July 2018, when S.S. told him that plaintiff had reported his conduct as sexual harassment.

Dr. Ponton testified that her report correctly stated plaintiff was completely disabled from work "until she had obtained the necessary treatment." Dr. Ponton explained, however, that her statement meant plaintiff would need to start treatment, at which point it would be up to a treating therapist to decide when she could return to work.

M.T. testified that she understood Dr. Ponton's report to mean plaintiff was unable to work until she completed three years of treatment. M.T. explained that her objective in reading the report was to determine whether plaintiff could return to work with accommodations. Based on Dr. Ponton's total disability finding, M.T. determined plaintiff could not be accommodated and, thus, recommended that her employment be terminated.

B.D.L., a defense vocational rehabilitation expert, testified that medical leave beyond one year does not typically serve as a disability accommodation, particularly in the absence of a definite return-to-work date.

On October 13, 2021, the jury returned a special verdict form rejecting each of plaintiff's claims. In particular, the jury found Speakman did not sexually harass plaintiff; his conduct was not outrageous; and plaintiff did not seek, and the County did not fail to provide, reasonable accommodation for her disability to permit her to perform the essential duties of her position as dispatcher.

On December 13, 2021, judgment was entered against plaintiff. On February 16, 2022, plaintiff's motion for a new trial was denied after a contested hearing. She then timely appealed.

6

Plaintiff seeks reversal of the judgment on the grounds that: (1) a juror engaged in prejudicial misconduct by offering " 'rogue' " expert opinions, (2) the jury was given two inappropriate and unnecessary instructions on the issue of reasonable accommodation, and (3) the trial court made inconsistent and erroneous evidentiary rulings. We address each issue in turn *post*.

## I.    *Juror Misconduct.*

Plaintiff contends the trial court committed prejudicial error by denying her motion for a new trial based on juror misconduct. (See *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18 [order denying motion for new trial is reviewable on appeal from the underlying judgment].) Specifically, she contends a psychologist juror engaged in prejudicial misconduct by "repeatedly t[elling] other jurors that, based on his own professional analysis, Kunz did not suffer PTSD and the tests used to evaluate her were substandard and 'outdated.' "

" 'In ruling on a request for a new trial based on jury misconduct, the trial court must undertake a three-step inquiry. [Citation.] First, it must determine whether the affidavits supporting the motion are admissible. (Evid. Code, § 1150.) If the evidence is admissible, the trial court must determine whether the facts establish misconduct. [Citation.] Lastly, assuming misconduct, the trial court must determine whether the misconduct was prejudicial.' " (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 160 (*Whitlock*).)

" 'A showing of misconduct creates a presumption of prejudice . . . .' [Citation.] This presumption may be rebutted by ' "an affirmative evidentiary showing that prejudice does not exist" ' based upon a consideration of such factors as ' "the strength of the evidence that

misconduct occurred, the nature and seriousness of the misconduct, and the probability that actual prejudice may have ensued." ' " (*Whitlock, supra*, 160 Cal.App.4th at p. 162.)

On appeal, we independently review the trial court's determination of whether a defendant was prejudiced by juror misconduct. (*Whitlock, supra*, 160 Cal.App.4th at p. 158.)

In moving for a new trial, plaintiff offered declarations from juror No. 9 and juror No. 7. In her declaration, juror No. 9 described the jury's deliberations on plaintiff's claim of intentional infliction of emotional distress, including the jurors' opinions of the parties' expert witnesses. Juror No. 9 attested that juror No. 1, a professional psychologist, was "very vocal" about plaintiff's' mental condition and the psychological testing that she underwent. Juror No. 9 further attested that juror No. 1 opined during deliberations that plaintiff did not suffer from PTSD, that the tests used to diagnose her were "substandard" and " 'outdated,' " and that he did not and would not use the same tests in his office.

Similarly, juror No. 7's declaration stated that juror No. 1 explained to the jury during deliberations the different types of psychological tests given to plaintiff and went over her test results and their meaning. According to juror No. 7, juror No. 1 expressed his belief that plaintiff did not suffer from PTSD, that the tests used on her were old, and that he would have used different tests in his office.

The trial court rejected plaintiff's new trial motion without making express findings on the juror misconduct issue. Nonetheless, we easily affirm the court's ruling. As stated *ante*, a claim of juror misconduct requires a showing of prejudice. (*Whitlock, supra*, 160 Cal.App.4th at pp. 160, 162.) Here, even assuming for the sake of argument misconduct occurred (an issue

we do not reach), the record definitively established there was no prejudice. Under California Supreme Court authority, it is when juror misconduct " 'supports a finding that there is a substantial likelihood that at least one juror was impermissibly influenced to the [plaintiff's] detriment, [that] we are compelled to conclude that the integrity of the trial was undermined.' " (*In re Malone* (1996) 12 Cal.4th 935, 964.)

Here, plaintiff argues that juror No. 1 engaged in prejudicial misconduct by " 'repeatedly stat[ing]' his belief that Plaintiff did not suffer PTSD 'based on his personal experience as a psychologist' and he 'spent a substantial amount of time explaining the meaning of [her] psychological test results' and 'told the other jurors that the tests were substandard and "outdated" ' . . . ." Even assuming juror No. 1's conduct constituted misconduct, there is no basis on this record to conclude even one other juror was " 'impermissibly influenced' " by his opinions " 'to [plaintiff's] detriment' " at trial. (*In re Malone, supra*, 12 Cal.4th at p. 964.) Indeed, the jury never even reached the issue of whether plaintiff suffered harm as a result of a hostile work environment because it found as a threshold matter that Speakman did not sexually harass her. Similarly, the jury did not decide whether plaintiff suffered emotional distress because it found that Speakman's conduct was not outrageous. Thus, because Speakman's conduct toward plaintiff was found not actionable in the first place, whether his conduct caused plaintiff to suffer PTSD was a nonissue notwithstanding juror No. 1's opinions on the matter. (Cf. *Whitlock, supra*, 160 Cal.App.4th at p. 157, 161 [juror who served in the Navy improperly interjected matters outside the scope of the trial by providing information to the jury about certain Navy repair/replacement practices where the " 'critical issue' " for jury was whether defendant's asbestos-containing block insulation inside a ship

9

boiler had been completely removed by the time plaintiff was aboard].) Accordingly, juror misconduct provides no grounds for reversal in this case.

## II. *Instructions on Reasonable Accommodation.*

Plaintiff also contends two special instructions on reasonable accommodation, requested by the County and given over her objections, were repetitive and unduly emphasized the County's arguments, thereby "preventing the jury from holding the County liable." The following rules apply.

"Pinpoint instructions" relate particular facts to a legal issue or pinpoint the crux of a defendant's case. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824.) " 'Upon proper request, a defendant has a right to an instruction pinpointing the theory of defense . . . if the theory proffered by the defendant is supported by substantial evidence' [citation], the instruction is a correct statement of law [citation], and the proposed instruction does not simply highlight specific evidence the defendant wishes the jury to consider [citation].' " (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1174; accord, *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 ["A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence"].)

The trial court " 'may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation].' " (*People v. Bivert* (2011) 52 Cal.4th 96, 120; accord, *Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1217 (*Major*).)

On appeal, we review a claim of instructional error de novo. (*Davis v. Honeywell Internat. Inc.* (2016) 245 Cal.App.4th 477, 495.)

10

The two special instructions challenged by plaintiff are as follows: (1) the "duty of an employer reasonably to accommodate an employee's disability does not arise until the employer is aware of the employee's disability and resulting restrictions"; and (2) a "finite leave of absence can be a reasonable accommodation provided it is likely that following the leave the employee would be able to perform his or her duties. But California . . . does not require the employer to provide an indefinite leave of absence."

Contrary to plaintiff's arguments, these special instructions were not redundant to the standard reasonable accommodation instruction (CACI No. 2451); nor did they "unnecessarily" emphasize the County's theories that she did not disclose her work restrictions and unreasonably sought indefinite leave. (See *Major, supra*, 169 Cal.App.4th at p. 1217.) The modified version of CACI No. 2541 read to the jury simply stated in relevant part that plaintiff must prove "Solano County knew of [her] mental condition that limited her ability to work." The County's special instructions, on the other hand, went beyond this basic knowledge requirement to clarify, based on particular facts in the record, that (1) the County had no duty to reasonably accommodate plaintiff's disability until it became aware of both her disability and the resulting restrictions and (2) the County was not required to provide plaintiff an indefinite leave of absence. As such, these instructions did exactly what pinpoint instructions are supposed to do—"relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case," which, in this case, was the lack of any duty owed by the County to provide plaintiff reasonable accommodation given the evidence of her complete inability to return to work for several years. (*People v. Saille* (1991) 54 Cal.3d 1103, 1119.)

11

Moreover, plaintiff implicitly concedes both instructions correctly stated the law, were supported by substantial evidence, and were not misleading.[1]  While the instructions certainly emphasized the County's theories, they did not do so unnecessarily or in an argumentative or redundant fashion.  As such, the County was entitled to have them read. (*People v. Jo, supra*, 15 Cal.App.5th at p. 1174; *Soule v. General Motors Corp., supra*, 8 Cal.4th at p. 572.)

## III.  *Evidentiary Rulings.*

Plaintiff also challenges the trial court's evidentiary rulings to (1) exclude as cumulative proposed testimony from her mother and daughter on the issue of her emotional distress; (2) admit a large number of text messages between her and S.S. (Speakman's wife) that plaintiff claims were irrelevant and inflammatory; and (3) exclude on hearsay grounds Dr. Ponton's entire report.  We review these rulings for abuse of discretion, meaning we affirm unless the trial court exceeded the bounds of reason. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447; *Poniktera v. Seiler* (2010) 181 Cal.App.4th 121, 142.)

### A.    **Exclusion of Family Members' Testimony.**

The trial court refused to permit testimony from plaintiff's mother and daughter on their observations of " 'significant change' " in plaintiff's health and well-being as a result of her sexting relationship with Speakman.  The court reasoned that the proposed testimony would be cumulative of testimony from plaintiff and her husband, who were also percipient witnesses to any

---

[1] In her reply brief, plaintiff labels the challenged instructions as "misleading."  However, plaintiff does not explain how the instructions were misleading other than to repeat her argument that they were repetitive to the CACI instruction and unduly emphasized defense arguments.

alleged changes, as well as testimony from her medical professionals. This ruling was not an abuse of discretion.

Plaintiff does not deny both she and her husband testified at length regarding the mental, physical and emotional changes she experienced as a result of Speakman's unwanted sexual communications. Dr. Lopes (plaintiff's treating psychologist) and Dr. Ponton, both of whom evaluated plaintiff, provided further testimony regarding her distress. Plaintiff fails to explain how testimony from her mother or daughter would have been in any way distinct from the testimony she was permitted to introduce on this issue. Instead, plaintiff insists that permitting repetitive testimony would have bolstered her believability. Perhaps, but this circumstance does not render the court's ruling erroneous, much less require its reversal on appeal. As the trial court explained in making its ruling, " 'courts may not use their powers to control the orderly conduct of the proceedings, to prevent cumulative evidence . . . , if it destroys a plaintiff's evidentiary presentation." (*Monroy v. City of Los Angeles* (2008) 164 Cal.App.4th 248, 266–267.) The court's ruling here did not destroy plaintiff's evidentiary presentation.

Finally, even if we were to assume the court's ruling was erroneous, we would find no prejudice on this record. As mentioned, the jury found Speakman's conduct was not outrageous. Accordingly, the jury was not asked on the special verdict form to decide whether plaintiff suffered emotional distress as a result of his conduct. Under these circumstances, additional testimony on the issue of plaintiff's emotional distress would not have resulted in a more favorable outcome for her.

**B. Admission of Texts Between Plaintiff and Speakman's Wife.**

At trial, plaintiff made a "continuing objection" to defense counsel's use during her cross-examination of a number of text messages that she

13

exchanged with S.S. from late 2015 to some point in 2018.  In these texts, which plaintiff described as "banter" and "chitchat," she expressed anger and frustration over her job and described her ongoing efforts to find a new one.

The County argued these texts were relevant because "there's been a lot of testimony about how much [plaintiff] loves her job and—and this indicates that that is not necessarily the case. · So that goes to both whether she would stay with the County, which is damages, and regarding credibility issues for her."

At trial, the trial court permitted defense counsel to use 25 pages of these texts after finding them relevant to an issue raised by plaintiff herself, to wit, that she loved and took pride in her County dispatcher job and would have stayed with it but for defendants' conduct.[2]  Accordingly, defense counsel cross-examined plaintiff at length regarding the fact that even before the alleged sexual harassment began she regularly communicated with S.S. about her dissatisfaction with her dispatcher job and her substantial efforts to find a new job with a different employer.

Plaintiff now challenges this ruling as prejudicial error, arguing the texts were cumulative and irrelevant, and needlessly tarnished her character. Her challenge fails.

"A judgment of the trial court may not be reversed on the basis of the erroneous admission of evidence, unless that error was prejudicial.  (Code Civ. Proc., § 475.)  The record must show that the appellant 'sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed.  There shall be no

_____

[2] After plaintiff expressed concern that thousands of text messages had been produced, the court obtained confirmation from defense counsel that counsel only intended to question plaintiff regarding "about 15 sets of text messages. · So probably a total of 25 pages."

14

presumption that error is prejudicial, or that injury was done if error is shown.' (*Ibid*.)  Additionally, article VI, section 13, of the California Constitution provides that a judgment may not be set aside based on the erroneous admission of evidence 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'  Evidence Code section 353 reinforces that provision:  we may not reverse a judgment 'by reason of the erroneous admission of evidence unless . . . [¶] . . . [¶] . . . the error or errors complained of resulted in a miscarriage of justice.' (Evid. Code, § 353, subd. (b).)  'In civil cases, a miscarriage of justice should be declared only when the reviewing court, after an examination of the entire cause, including the evidence, is of the opinion that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]  In making this assessment 'we are not to look to the particular ruling complained of in isolation, but rather must consider the full record in deciding whether a judgment should be set aside.' [Citation.]  The appellant bears the burden of establishing that the error was prejudicial." (*Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 799 (*Grail*).)

Plaintiff has come nowhere near to meeting her burden of establishing error from the court's ruling, much less error resulting in a miscarriage of justice.  In fact, in raising her challenge, plaintiff fails to analyze any particular text message with reference to a specific objection or claim of prejudice.  She merely asserts, without more, that the "text messages contained inflammatory and vulgar language and profanity by plaintiff, improperly tarnishing her character in the eyes of the jury."  Moreover, plaintiff makes no attempt to place these text messages in the context of the

15

entire record in order to demonstrate that she " 'sustained and suffered substantial injury, and that a different result would have been probable if [admission of the text messages] . . . had not occurred or existed.' " (*Grail, supra*, 225 Cal.App.4th at p. 799.) This does not suffice. (*Ibid.*) Accordingly, we affirm the court's ruling.

### C. Refusal to Admit Dr. Ponton's Report in Its Entirety.

Plaintiff also challenges the trial court's refusal to admit the entire seven-page report prepared by her expert, Dr. Ponton. Specifically, the court excluded as hearsay the report's beginning section, in which Dr. Ponton recited information she received from plaintiff, her attorney and her husband regarding plaintiff's personal history, including her childhood and adolescence (personal history section). The court admitted the sections of the report relating to Dr. Ponton's knowledge of plaintiff's disability ("Mental Status Examination" and "Psychiatric Care History") as well as her "Assessment and Recommendations."

Plaintiff argues this ruling was erroneous because the excluded information was relevant not for its truth but to prove the County knew of her disability when the County terminated her employment. Plaintiff reasons that M.T. testified that she read Dr. Ponton's entire report and discussed it with her supervisor before recommending her termination. Specifically, M.T. testified that she decided against continuing communications with plaintiff regarding her possible return to work because " 'Dr. Ponton's letter' said [plaintiff] was 'completely disabled from working at that time and needed to complete treatment for up to 3 years.' "

We conclude the partial exclusion of Dr. Ponton's report was neither an abuse of discretion nor prejudicial. While plaintiff is correct that M.T. relied on Dr. Ponton's report in recommending termination rather than

16

accommodation for plaintiff, M.T. made clear in testimony that she did not rely on the entire report. Rather, M.T. ignored the personal history section and relied only on those sections of the report in which Dr. Ponton discussed plaintiff's disability and work prognoses, to wit, the sections of the report that were admitted into evidence. In doing so, M.T. explained that she ignored the details of plaintiff's personal history because they were not relevant to her assigned task of determining on behalf of the County whether plaintiff could resume her dispatcher duties with reasonable accommodation notwithstanding her disability. On this record, the trial court could reasonably exclude the report's personal history section on hearsay grounds and admit instead those sections of the report containing nonhearsay evidence about Dr. Ponton's knowledge of plaintiff's disability and her overall assessment and recommendations. (See *People v. Nieves* (2021) 11 Cal.5th 404, 445 [a trial court's decision to exclude evidence will not be disturbed on appeal unless there is a showing that the court acted in an arbitrary, capricious, or absurd manner].)

Moreover, in any event, as the County notes, the court permitted Dr. Ponton to testify at length regarding the information she received about plaintiff's personal history and how it may have factored into her emotional distress. Dr. Ponton was also cross-examined regarding the "negative experiences in [plaintiff's] past" and how they relate to the PTSD that she was currently experiencing. On this record, even assuming for the sake of argument the court's exclusion of the personal history section of Dr. Ponton's report was erroneous (it wasn't), it is not reasonably probable plaintiff would have obtained a more favorable outcome at trial had the entire report been admitted. (*People v. Robinson* (2005) 37 Cal.4th 592, 627 [erroneous exclusion of evidence is an error of state law that requires reversal only if

17

there is a reasonable probability that a more favorable outcome would have resulted had the evidence been admitted].)

## IV. *No Cumulative Error.*

Lastly, plaintiff argues the cumulative impact of the trial court's purported erroneous rulings tilted the playing field in favor of the defense, requiring reversal. As we have discussed, however, there were few, if any, errors in this trial and none that were prejudicial. Accordingly, plaintiff's argument is misplaced, as it is not reasonably probable that but for the cumulative effect of multiple errors a result more favorable to her would have been reached. (*Johnson v. Tosco Corp.* (1991) 1 Cal.App.4th 123, 141.)

**DISPOSITION**

The judgment is affirmed.

Jackson, P. J.

WE CONCUR:

Simons, J.
Chou, J.

A164853/*Kunz v. Solano County*