Filed 1/7/16  Votta v. Alinsod CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DEBRA VOTTA, | |
| Plaintiff and Appellant, | G050831 |
| v. | (Super. Ct. No. 30-2009-00323060) |
| RED ALINSOD et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Mary Fingal Schulte, Judge.  Affirmed.

Law Offices of Ramin R. Younessi, Ramin R. Younessi and Gabriel J. Pimentel for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Maureen M. Home; Law Brandmeyer & Packer, Yuk K. Law and Jennifer Villebro for Defendants and Respondents.

*          *          *

After a jury awarded plaintiff and appellant Debra Votta just over $670,000 in her medical malpractice action against defendants and respondents Red Alinsod (defendant) and South Coast Urogynecology, Inc., the court granted defendants' motion for new trial based on juror misconduct. Specifically the court found one juror, Scott Remick, concealed his bias against defendants on voir dire and prejudged the case against them before deliberations began.

Plaintiff argues most of the evidence on which the court relied was inadmissible and further there is no evidence Remick failed to disclose any bias. In addition, she contends defendants were not prejudiced by any predeliberation discussions. Finally, plaintiff claims the court violated her due process by relying on evidence defendants submitted to support other grounds on which they based their motion.

Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

This is the second time this case has been before us. In the first (*Votta v. Alinsod* (Jan. 31, 2013, G046388) [nonpub. opn.]), we reversed a summary judgment in favor of defendants based on a finding the statute of limitations had run. The facts are detailed in that opinion and we do not repeat them in detail here. Suffice it to say defendant performed surgery on plaintiff to correct pelvic organ prolapse. There were complications ultimately resulting in a loss of one of plaintiff's kidneys and surgical removal of some of the mesh implanted. (*Id*., pp. 2-3.) In her complaint, plaintiff alleged defendant failed to warn her about the risks of surgery, failed to perform necessary and regular diagnostic tests, and failed to diagnose postoperative surgical complications. (*Id*., p. 4.) She also alleged South Coast failed to properly supervise defendant. (*Ibid*.)

In the liability portion of the trial,[1] on a nine-to-three vote the jury found in favor of plaintiff. Subsequently, defendants filed a motion for new trial on a variety of

---

[1] The statute of limitations issue was tried separately and is not an issue in this appeal.

grounds, including jury misconduct and irregularity in the jury proceedings. In support of the motion defendants filed the declarations of three jurors. The court sustained objections to a part of them. The remaining relevant portions, on which the court either explicitly or implicitly relied, follow.

In his declaration Juror Remick stated: "In conversations with jurors during trial, but before jury deliberation myself as well as other jurors stated they had already decided all [*sic*] they were going to vote. This is not how a trial should work. We should have waited until jury deliberations to decide."

Remick also stated, "During jury deliberations, I advised the jury that I am in the insurance business and that Dr. Alinsod would have malpractice insurance to cover any award we made. I explained the money would come from Dr. Alinsod's insurance company and not from Dr. Alinsod directly so the jury should not feel badly about giving Mrs. Votta an award. In fact, . . . I encourage [*sic*] the jury to award a large sum of money to Mrs. Votta."

Finally, Remick declared: "I had several tests run at that time which influenced my judgment of Dr. Alinsod as a doctor and the tests he did or did not run on Mrs. Votta."

Juror Paul Mangone filed a declaration stating: "On Monday 2 June 2014, Juror No. 9, Scott Remick, approached me. He wanted to know if I had made a decision on how I was going to vote on the case. I told him I had not. He mentioned that he knew the way several other jurors were going to vote. He also wanted my support to, in his own words, 'back him up' on selection of the Jury foreman, Anthony Cortes. I told him that [Cortes] seemed to be a reasonable choice but I wanted to leave it up to the group to decide. This happened before deliberation began."

He also declared, "[Remick] said that his experience could be used and applied to this case as to how a doctor should take care of his/her patients." Finally, he stated "[Remick] insulted and challenged other [j]urors that disagreed with him."

3

In his declaration Juror George Perez stated: "As soon as the door closed for Phase 2 deliberations, [Remick] blurted out that 'I believe that [Cortes] should be the foreman' which was similar to his same statement at the beginning of Phase 1 deliberations. Once again, I had to stop him by reminding him that there may be others who wished to step up. This exchange was typical through the first day wherein [Remick] would take over the topic of discussion, talk over those who expressed an alternate view, delivered derisive and demeaning comments as others were speaking, and was physically threatening with his voice and body language."

Perez also stated: "During the review of monetary damages, [Remick] addresses [*sic*] the jurors; [¶] 'I am in insurance. Alinsod has malpractice insurance and will not be paying a dime. His insurance will pay for the [a]ttorney, court costs, experts, and pain and suffering.'" (Italics omitted.)

Perez declared that Remick "detailed numerous anecdotal stories in his life of the negative contact and his opinion of doctors treating his chronic kidney, urinal, and shingles diseases . . . . [¶] . . . [¶] [He also] included comments which demonstrated disregard and distrust of doctors in general."

Plaintiff filed the declarations of two jurors, Cortes and Thuan (Gina) Khau, in opposition. Cortes stated he served as the foreman. The preliminary vote was seven to five in favor of plaintiff. He also stated there was no mention of insurance before the decision to award plaintiff $500,000 for pain and suffering. When the question of the amount for future medical care came up, one juror asked, "'Wouldn't insurance cover that?' That is the first and only comment I heard regarding insurance. I never heard any juror state or insinuate that Dr. Alinsod had insurance to pay for any of the damages we award [*sic*] to [plaintiff] or any words to that effect."

Cortes also "never heard" Remick say "he was in the insurance industry and then speculate[] that Dr. Alinsod had insurance to cover the damages we were awarding [plaintiff]." He stated, "If [J]uror Remick made any comments to [Mangone or

4

Perez] about insurance during any of these conversations [during deliberations], I did not hear them. Also, if Juror Remick did mention insurance to Mr. Mangone or Mr. Perez, I don't think anyone else heard them because I didn't ever hear any jurors respond or comment on Mr. Remick's alleged insurance comment."

In her declaration Juror Khau reiterated the preliminary seven-to-five split. She also stated she never heard any mention of insurance or negative comments about doctors, nor did she feel pressured as to how to vote. Prior to deliberations she did not discuss the case with anyone. She was not asked how she would vote nor did she hear any jurors speak about how they would vote.

The court issued a detailed order granting the motion on the ground of Remick's misconduct. Specifically, it found Remick prejudged the case and concealed bias on voir dire.

The court began with the premise that misconduct of this kind creates a presumption of prejudice that can be rebutted only by admissible evidence showing there was no actual prejudice.

The court found the declarations of Cortes and Khau did not rebut the presumption. First, based on "overwhelming evidence to the contrary," the court did not believe the only mention of insurance was during the discussion of pain and suffering. Second, that Cortes and Khau did not hear other jurors say they had made up their minds "doesn't mean no one said it." Rather, there was "credible and admissible testimony that at least one juror [i.e., Remick] had made up his mind."

As to Remick, the court noted that on the juror bio sheets, he disclosed he was employed as an insurance agent. He "stated he could be fair" and "would follow the Court's instructions," but, according to his own declaration, did neither. Rather, he "admit[ted] discussing insurance in the jury room" and relied on "being 'in the insurance business'" to reassure the jury it should "'not feel badly'" about awarding damages to

5

plaintiff. The court ruled this was "objective evidence of a bias against" defendant and "an astonishing lack of fair-mindedness."

In addition, the court overruled plaintiff's objection to Remick's statement in his declaration regarding his medical tests that had "influenced [his] judgment of [defendant] as a doctor." It held this did not show Remick's mental processes but was another admission of bias.

Finally, the court relied on Remick's statement that before deliberations, he and other "'jurors stated they had already decided how [*sic*] they were going to vote.'"

The court also relied on Perez's declaration. Perez stated that from the onset of deliberations, Remick was "derisive and demeaning to others, and talked over those who expressed 'alternate views.'" The court did not admit the statement to show Remick's thought processes but rather as objective evidence Remick had made up his mind before deliberations. Also admitted as corroboration of the objective evidence of Remick's prejudgment of the case was the description of his "'bullying and coercive behavior.'"

Remick's statements about insurance also corroborated that he was biased and willfully disregarded jury instructions. The same was true of Remick's anecdotes about "'the negative contact and his opinions of doctors.'"

In addition, the court relied on the declaration of Mangone. He too said Remick discussed the case before deliberations, stating he knew how "'several other jurors were going to vote'" and questioning others if they had also decided. The court acknowledged the statement did not show how Remick or the others were going to vote but illustrated the improper discussions before deliberations. Moreover, Remick demonstrated bias when he stated other jurors could rely on his experience "'as to how a doctor should take care of his/her patients.'" Again, Remick's insults and bullying behavior were a "pattern of conduct" evidencing his bias.

6

In sum, the court found "[t]here [was] overwhelming evidence" Remick "violated his oath as a juror by failing to disclose bias, and by discussing the case and deciding how he was going to vote before the matter was submitted for deliberation," depriving both plaintiff and defendant of a fair trial.

## DISCUSSION

### 1. *Review of Grant of Motion for New Trial*

Where the court sets out a statement of reasons, as was done here (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 159; *Whitlock*), the grant of a motion for new trial is reviewed for abuse of discretion, with all presumptions in favor of the trial court's ruling (*Grobeson v. City of Los Angeles* (2010) 190 Cal.App.4th 778, 794; *Grobeson*). The prevailing party's declarations "'"are deemed not only to establish the facts directly stated therein, but all facts reasonably inferred from those stated." [Citation.]' [Citation.]" (*Grobeson*, at p. 794.) We do not reweigh controverted facts but defer to the trial court's findings. (*Ibid*.)

In reviewing the ruling, we undertake a three-pronged analysis. First, we consider the admissibility of the declarations supporting the motion. If they are admissible, we must determine whether the evidence shows misconduct. If the facts show misconduct, we then decide whether it was prejudicial. (*Whitlock*, *supra*, 160 Cal.App.4th at p. 160.)

### 2. *Admissibility of Juror Declarations*

"Evidence of jurors' internal thought processes is inadmissible to impeach a verdict. [Citations.] Only evidence as to objectively ascertainable statements, conduct, conditions, or events is admissible to impeach a verdict. [Citations.] Juror declarations are admissible to the extent that they describe overt acts constituting jury misconduct, but they are inadmissible to the extent that they describe the effect of any event on a juror's subjective reasoning process. [Citation.]" (*Bell v. Bayerische Motoren Werke*

*Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1124-1125, fn. omitted; see Evid. Code, § 1150, subd. (a).)

Plaintiff contends the court erred in overruling certain of her objections to the three declarations on which it relied.

### a. Declaration of Mangone

Plaintiff challenges three statements in Mangone's declaration.  First she points to the statement, "[Remick] wanted to know if I had made a decision on how I was going to vote on the case.  I told him I had not.  He mentioned that he knew the way several other jurors were going to vote."[2]  Plaintiff claims this is not evidence of an "objectively ascertainable statement" but only a conclusion about Remick's mental processes.

In *Grobeson*, *supra*,190 Cal.App.4th 778, a similar argument was rejected. In support of a motion for new trial, the defendants filed declarations of two jurors that a third juror had said, "'I made up my mind during trial.'"  (*Grobeson*, at p. 790.)  The court found this showed the third juror's bias because she prejudged the case (*ibid*.), which "was an improper influence on the verdict" (*id*. at p. 792).

That the statement also revealed the third juror's mental processes did not prevent the court from considering it.  (*Grobeson*, *supra*, 190 Cal.App.4th at p. 791.) "[W]e *must* take into account" "at least one state of mind" "and that is where the juror has prejudged the case or was biased."  (*Id*. at p. 788.)  "[A] statement of bias is misconduct because bias is misconduct."  (*Ibid*.)

Plaintiff contends Remick's statement he knew how others intended to vote was a benign statement that could not show bias and thus was inadmissible.  Plaintiff asserts the only possible reason to admit this evidence is to show misconduct based on

---

[2]  Plaintiff also asserts Remick's statements seeking support for selection of Cortes as the foreman do not show bias.  But nothing in the ruling shows the court relied on this statement and we need not discuss it.

Remick's prejudgment, a ground the trial court rejected as the basis for its ruling. This is not correct. The court specifically granted the motion based on Remick's prejudgment.

Plaintiff argues a second error was admission of Remick's statement "'his experience could be used and applied to this case as to how a doctor should take care of his/her patients,'" because it did not show bias nor was it prejudicial. But this too is an objectively ascertainable statement that is admissible regardless of whether it showed bias. And it bolsters Remick's other statements about his negative interactions with and opinions of doctors.

Likewise, plaintiff's claim the evidence could only be admitted to show "'reliance on outside knowledge and information,'" another ground on which the court specifically did not rely, is incorrect. The court found and we agree this statement was "another admission that [Remick's] medical history biased him against [defendant]."

Finally, plaintiff attacks admission of the statement Remick "'insulted and challenged other jurors that disagreed with him,'" again asserting it was merely an inadmissible conclusion about Remick's mental processes. She vainly relies on *Sarti v. Salt Creek Ltd*. (2008) 167 Cal.App.4th 1187, 1213, where the jury found in favor of the plaintiff in a food poisoning case. The contents of the declarations in support of the motion for new trial were all generally the same, to the effect that the jury "'agreed'" the defendant had "prove[d] that its food didn't cause the food poisoning." (*Id*. at p. 1213.) The court found that because the declarations lacked any detail, they were only conclusions about mental processes of the jurors. (*Ibid*.)

In this case the court did not admit the statement to prove its truth but rather relied on it as additional evidence of Remick's pattern of conduct revealing bias. Plaintiff argues that even so, the statement merely shows Remick was rude, not that he

9

was biased. Regardless of whether Remick was rude, the statement does tend to show he did not intend to engage in deliberations and thus had already made up his mind.[3]

### b. *Declaration of Perez*

Plaintiff challenges admission of a statement in Perez's declaration where he similarly stated Remick took over the deliberations, made demeaning comments while other jurors were speaking, and "was physically threatening with his voice and body language." Again she maintains this shows only a conclusion as to Remick's thought processes and is not an objectively verifiable statement.

As before the court specifically ruled it did not admit the statements to show thought processes but only as corroboration of objective evidence that Remick had decided the case before deliberations.

Plaintiff's claim the statements do not show bias because Remick was not mentioned in the paragraph is inaccurate. And, for the same reasons as discussed above regarding a similar statement made by Mangone, we reject the argument the statements about demeanor and body language do not show bias.

### c. *Declaration of Remick*

Plaintiff objects to this statement in Remick's declaration: "In conversations with jurors during the trial, but before jury deliberation myself as well as other jurors stated they had already decided *all* [*sic*] they were going to vote. This is not how a trial should work. We should have waited until jury deliberations to decide." (Italics added.) The court read the first sentence to state, "not very artfully," that certain jurors had decided *how* they were going to vote before deliberations.

---

[3] The record is ambiguous about whether this statement was admitted. The written ruling on objections shows the court sustained plaintiff's objection while the minute order overruled it. In any event, even without this statement, there is more than enough evidence to affirm the court's ruling on the motion. (*Whitlock, supra* 160 Cal.App.4th at p. 159 [we review only to see if "there was *any* support for the trial judge's ruling"; italics added].)

10

Plaintiff contends that if we construe the first sentence as it is written, it means only that "some jurors decided that they were going to vote on a verdict (as opposed to not voting at all)." Thus, there would be no evidence of misconduct.

But this makes little or no sense and is not a plausible reading. First, it is grammatically incorrect. Second, it is not reasonable to assume that some jurors might decide not to vote at all. Third, that interpretation makes the last two sentences nonsensical or superfluous or both. Surely, Remick would not be stating that some jurors' decision to vote is not how a trial should work. And even plaintiff concedes "'all'" could have been a typographical error. Further, "[w]e do not seek out inferences that, if true, would cause us to reverse the trial court's order granting the motion for a new trial." (*Grobeson*, *supra*, 190 Cal.App.4th at p. 795.)

On the other hand the court's construction of Remick's statement is reasonable and it is consistent with the rule that a prevailing party's declarations are construed to prove not only facts stated therein but also any facts that can be reasonably inferred. (*Grobeson*, *supra*, 190 Cal.App.4th at p. 794.)

*People v. Allen and Johnson* (2011) 53 Cal.4th 60, on which plaintiff relies, is inapt. There, during deliberations, a juror said something like, "'When the prosecution rested, she didn't have a case.'" (*Id*. at p.72.) The court held this statement required interpretation and was insufficient to show the juror had prejudged the case. It did not show the juror had refused to listen to evidence, had a closed mind during deliberations, or failed to deliberate. (*Ibid*.)

Contrary to plaintiff's argument, Remick's statement here was not subject to interpretation nor were there any impermissible inferences drawn. The statement is quite clear and comparable to the juror's statement in *Grobeson*. The court was not required to speculate to come to its conclusion as to the meaning.

We reject plaintiff's contention there could be no bias because Remick did not say how he and other jurors were going to vote. Again, the court relied on this

11

statement to show misconduct based on Remick's premature decision, not bias. Further, based on the entirety of the admissible evidence, the court found there could "be no other reasonable inference but that the target of the prejudgment/bias was" defendant.

Plaintiff's argument that the principle requiring a strict interpretation of declarations in support of a motion for summary judgment should apply to the declarations here is unfounded. She cites no authority for the proposition and we found none.

In sum, we see no error in the court's ruling on the admissibility of the evidence.

### d. Evidence Proffered to Support Other Grounds for Motion

Plaintiff complains that in granting the motion on the basis of failing to reveal bias and prejudgment of the case, the court relied on evidence that had been offered only to support other grounds. She specifically refers to Remick's discussion of being in the insurance business to encourage the jurors to award damages to plaintiff, Perez's statement Remick discussed insurance and stories of his negative interactions with doctors, and Mangone's statement Remick was rude and challenged jurors who did not agree with him. Plaintiff claims the court's reliance on these portions of the declarations violated her due process rights because she had no notice and no opportunity to rebut the evidence on the grounds of bias and prejudgment. Instead, she only addressed this evidence on the ground of improper discussion of insurance or reliance on outside knowledge. This argument does not persuade.

Plaintiff had the opportunity to and did address the evidence, albeit in connection with the other grounds. In addition, plaintiff discussed the evidence in her briefs as to bias and prejudgment. There was no due process violation.

### 3. Misconduct

Having determined the juror declarations were admissible, we examine the second prong of the test, i.e., whether the evidence shows Remick committed

12

misconduct. Plaintiff attacks only the finding Remick failed to disclose his bias. Her principal claim is that this finding is not supported in the record because there is no transcript of voir dire, and that the court agreed no one asked Remick about any biases during voir dire. This is not entirely accurate.

It is true jury selection was not reported. But the trial judge explained she had "[her] own recollection," saying "I did a pretty thorough voir dire." In reply, Remick said "I'm not biased[;] I can be fair."[4] This is sufficient to show Remick improperly concealed his bias.

The court also granted the motion based on discussing and deciding the case before deliberations. Other than challenging the admissibility of the evidence, as discussed above, plaintiff makes no argument there is insufficient evidence of this form of misconduct, thus forfeiting the claim. (*Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 165.)

"There is no doubt juror misconduct occurred here. Moreover, that misconduct is serious. 'For a juror to prejudge the case is serious misconduct. [Citations.]' [Citation.] The declarations indicate that [a j]uror . . . made up his mind [how to vote before completion of the trial]. Even if we were to assume that [the juror] convinced no other juror to find for defendant, his conduct is prejudicial because the final tally was nine to three. As the California Supreme Court has noted, . . . where 'the verdict was nine to three, the disqualification for bias of any one of the majority jurors could have resulted in a different verdict.' [Citation.]" (*Province v. Center for Women's*

---

[4] There are certain alleged biases on which the court did not rely. It observed Remick had disclosed in voir dire he was employed in the insurance industry and the court denied the motion based on improper reliance on outside information. The court agreed neither attorney had asked about a potential juror's ability to view graphic evidence. However that did not factor into the decision to grant the motion. Finally, the court ruled it was not relying on Remick's failure to disclose in voir dire his chronic kidney condition and knowledge of appropriate tests.

*Health & Family Birth* (1993) 20 Cal.App.4th 1673, 1679-1680, disapproved on other grounds in *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 41.)

*4. Prejudice*

The final factor is whether the juror misconduct prejudiced defendant. "Once juror misconduct is established, a presumption of prejudice arises. [Citation.] This presumption may be rebutted only by 'an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party resulting from the misconduct.' [Citations.]" (*Glage v. Hawes Firearms Co.* (1990) 226 Cal.App.3d 314, 321, italics omitted.)

Here we do not have a record of the trial proceedings. Thus we cannot review the record to determine a probability of actual harm to defendant. Therefore, to prevail plaintiff must affirmatively show there was no prejudice.

"Some of the factors to be considered when determining whether the presumption is rebutted are the strength of the evidence that misconduct occurred, the nature and seriousness of the misconduct, and the probability that actual prejudice may have ensued." (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 417.)

We are not persuaded by plaintiff's attack on the declarations of Perez and Remick. She points to the statement in Perez's declaration where Remick talked about treatment of his kidney and urination problems, including several trips to the emergency room, and receipt of contradictory diagnoses. She asserts there is no evidence whether Remick's opinions about doctors were positive or negative.

But Perez's declaration states otherwise. He said Remick "detailed numerous anecdotal stories in his life of the negative contact and his opinion of doctors treating" his various diseases and "[i]ncluded comments which demonstrated disregard and distrust of doctors in general." Contrary to plaintiff's conclusion, this is evidence of prejudicial bias.

14

As to Remick's declaration, plaintiff argues the mere fact jurors might have discussed the case before deliberations does not automatically equate to prejudice, citing *Williams v. Layne* (1942) 53 Cal.App.2d 81, 86. She reverts back to her contention that even assuming Remick stated some of the jurors had decided how they were going to vote before deliberations, he did not say how they were going to vote. She also challenges the "veracity" of Remick's declaration because he does not identify the other jurors who had prematurely made up their minds. In addition, Cortes and Khau deny any knowledge of prior discussions.

Thus, she maintains, there is no evidence of prejudice. This argument has several flaws.

First, the court relied on the statement Remick knew how some of the other jurors would vote only to demonstrate there were improper discussions before deliberations, which was misconduct. Prejudgment of a case is prejudicial. (*Grobeson*, *supra*, 190 Cal.App.4th at p. 792.)

Second, we agree with the trial court that the statements in declarations of Cortes and Khau that they heard nothing about insurance, no negative comments about doctors, or no jurors discussing the case before deliberations do not rebut the presumption of prejudice. This is especially true in light of the credibility determinations the court made that there was overwhelming contrary and credible evidence that at least Remick had made up his mind prematurely.

Moreover, contrary to *Williams v. Layne, supra,* 53 Cal.App.2d 81, in this case there is not only a presumption of prejudice, there is actual prejudice. As in *Grobeson*, "the loss of one biased juror on votes of nine to three actually prejudiced [defendants]." (*Grobeson*, *supra*, 190 Cal.App.4th at p. 792.)

This case is not comparable to *People v. Allen and Johnson*, *supra*, 53 Cal.4th 60, on which plaintiff relies. There, the juror's statement in controversy was that "'[w]hen the prosecution rested, she didn't have a case.'" (*Id*. at p. 72.) The court found

15

the statement was not clear enough to show the juror had prejudged the case. (*Ibid.*) Here Remick's statement plainly showed he had.

Nor does *MacPherson v. West Coast Transit Co.* (1928) 94 Cal.App. 463, 468-469 support plaintiff's claim. In that case, one juror filed a declaration that, at the scene of the accident that was the subject of the trial, he saw jurors talking to one another and pointing to conditions. This is not at all comparable to Remick's statement, that before deliberations, he and other jurors had decided how they were going to vote.

*5. Conclusion*

We can reverse the new trial order "'"only on a strong affirmative showing of abuse of discretion." [Citation.]' [Citation.]" (*Whitlock, supra,* 160 Cal.App.4th at p. 159.) Pursuant to the standard of review, we must "accept the trial court's resolution of the facts" and "also draw the reasonable inferences that flow from [them]." (*Grobeson, supra*, 190 Cal.App.4th at p. 794].) "'"[T]he trial judge is familiar with the evidence, witnesses and proceedings, and is therefore in the best position to determine whether, in view of all the circumstances, justice demands a retrial."'" (*Whitlock,* at p. 159; *Grobeson,* at p. 795 [same].)

The record demonstrates the court exercised its discretion properly, only after much consideration and deliberation. The trial judge acted with great reluctance, noting that in her 17 years on the bench this was the first time she had granted a motion for new trial based on juror misconduct. In light of all of the facts and circumstances, the ruling was reasonable and there was no abuse of discretion.

## DISPOSITION

The order is affirmed.  Defendants are entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


MOORE, J.