Filed 8/11/16  Mercado v. Calif. Dept. of Transportation CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LOURDES MERCADO et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION,<br><br>        Defendant and Appellant. | A142173<br><br>(Alameda County<br>Super. Ct. No. HG09486029) |

**I.**

**INTRODUCTION**

In 2008, Victor Mercado was killed in a vehicle accident on the Interstate 880 (I-880) freeway.  Mercado's wife and heirs (plaintiffs) sued the California Department of Transportation (Caltrans) for maintaining a dangerous condition of public property. (Govt. Code, § 835.)[1]  After a jury returned its verdict in favor of Caltrans, the trial court granted plaintiffs a new trial on the grounds that they were prejudiced by an "[i]rregularity in the proceedings" and an "[a]ccident or surprise, which ordinary prudence could not have guarded against."  (Code Civ. Proc., § 657, subds. (1), (3).)  On appeal, Caltrans contends that the trial court abused its discretion by granting plaintiffs a new trial.  We affirm the order on the ground of a prejudicial accident or surprise, and thus do not consider the other basis for the trial court's ruling.

---

[1] Unless otherwise specified, statutory references are to the Government Code.

1

## II.
## STATEMENT OF FACTS

On the morning of June 26, 2008, Mercado was driving a Mack tractor-trailer Waste Management truck on I-880 in San Leandro, at an approximate speed of 55 miles per hour. That stretch of highway consists of eight lanes, with a concrete barrier dividing the north and southbound traffic. Mercado was traveling southbound in the third lane from the center divide. At the same time, Hiram Torres was driving his Toyota Corolla in the first southbound lane, which was the closest to the concrete divider. Torres lost control of his vehicle when its left rear tire suffered a blowout. He swerved into Mercado's lane, hitting the front left axle of Mercado's tractor. The impact sent Mercado's vehicle off course, across two lanes of traffic and into the concrete barrier.

The parties disagree about whether Mercado's truck rode up the barrier or crashed through the base of the wall. In either event, the median broke and Mercado's vehicle crashed into northbound traffic, setting off a series of collisions, a fire and an explosion. Mercado and another man died. An autopsy showed that Mercado survived the impact of the collisions with the barrier and the other vehicles, but he died from injuries caused by the fire.

## III.
## PERTINENT PROCEDURAL HISTORY

The procedural history of this case is long and sometimes confusing. Our summary highlights the events that are directly relevant to this appeal.

### A. The Pleadings

In November 2009, plaintiffs filed a complaint for damages for the wrongful death of Mercado. Two causes of action in the complaint alleged negligence-based claims

against Caltrans for creating and maintaining a dangerous and defective condition of the roadway in violation of section 835.[2]

Section 835 states: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

The term "dangerous condition" is defined in section 830, subdivision (a) (section 830(a)), which states: " 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

Plaintiffs' causes of actions for violating section 835 were supported by allegations that Caltrans negligently created and maintained a dangerous and defective condition on the I-880 freeway which exposed drivers to an unreasonable risk of harm. "In particular," plaintiffs alleged, Caltrans designed and maintained the center divider at this location on the highway so that it did not serve its intended function of "redirect[ing] vehicles contacting the divider back into the vehicle's proper lane of travel." Instead, plaintiffs alleged, the barrier "functioned as a launching ramp and served to catapult the Mack truck being driven by [Mercado] airborne so that it crashed on top of the divider

---

[2] Plaintiffs also alleged causes of action for negligence against Torres, and strict liability and breach of warranty against the manufacturer and seller of the tire on Torres's car. In the summer of 2011, plaintiffs settled their claim against Torres, and voluntarily dismissed the other defendants except for Caltrans.

and went over the divider and through the divider and entered the northbound lane(s) of the roadway."

According to the complaint, the "failure" of the center divider to redirect Mercado back into his direction of traffic, and to keep Mercado's vehicle on the southbound side of the highway, along with the debris that "spewed forcefully from the divider when it broke apart upon impact," caused or contributed to the collision between Mercado's truck and the northbound vehicles, which caused or contributed to the resultant explosion and fire, "all of which caused and/or contributed to the death of plaintiffs' loved one."

In January 2010, Caltrans filed an answer to the complaint in which it denied "each and every, all and singular, generally and specifically the allegations against it contained therein." Caltrans also alleged 17 affirmative defenses. The fourth affirmative defense, which is directly pertinent to this appeal, stated: "The alleged condition of the property did not constitute a dangerous condition as it did not pose a substantial risk of injury, and, if there was any risk involved, it was merely a minor, trivial, or insignificant risk, and therefore the State is not liable for the alleged injuries and damages, pursuant to Government Code § 830.2."

Section 830.2 states: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."

**B. Discovery**

**1. *2010***

Plaintiffs propounded form interrogatories, including Form Interrogatory No. 15.1, which requested that Caltrans provide certain information with respect to each material allegation in the complaint that Caltrans denied and each affirmative defense that Caltrans alleged in its answer. Specifically, plaintiffs sought to discover what facts,

4

witnesses and documents Caltrans intended to use to support each of its denials and each of its affirmative defenses.

In a September 2010 response to Form Interrogatory No. 15.1, Caltrans stated: "Defendant State of California objects to this interrogatory on the grounds that it seeks information protected by the attorney-work product doctrine and the attorney-client privilege." Caltrans did not provide a privilege log or any explanation as to why the requested information was privileged.

## 2. *2012*

On June 4, 2012, Caltrans provided another response to Form Interrogatory No. 15.1, which stated: "This defendant has asserted affirmative defenses available to it under the provisions of the applicable statutory and case law in order to preserve its right to do so. Until discovery is completed, this defendant cannot specifically produce any and all documents that support such affirmative defenses other than to state that the documents that will be produced in Defendant State of California's Response to Plaintiff's Production Demand, Set One, the complaint [*sic*] support this defendant's affirmative defenses as set forth in the Answer to the Complaint."

Plaintiffs made more than one attempt to meet and confer regarding Caltrans's response to this form interrogatory. A Caltrans attorney who addressed the matter in a June 21, 2012 letter stated: "With regard to Response to Form Interrogatory 15.1: The State is relieved from the burden of examining and summarizing documents to answer this interrogatory under [Code of Civil Procedure] Section 2030.230. We have sufficiently answered this interrogatory by specifying the document from which the answers may be derived or ascertained." (Italics omitted.) The following week, the issue was addressed at a deposition. This time the Caltrans attorney agreed, on the record, to provide a supplemental response identifying documents and witnesses, but "with the caveat that it may be supplemented or amended at a later date, because we haven't completed discovery."

On June 29, 2012, Caltrans provided a supplemental response to Form Interrogatory No. 15.1, which stated: "This defendant has asserted affirmative defenses

5

available to it under the provisions of the applicable statutory and case law in order to preserve its right to do so. Until discovery is completed, this defendant cannot specifically produce any and all documents that support such affirmative defenses other than to state that the documents that have been produced in Defendant State of California's Response to Plaintiff's Production Demand, Set One, the state pmk [person most knowledgeable] depositions, the CHP traffic collision report, as well as the Plaintiffs' complaint support this defendant's First, Second, Fifth, Eighth, Ninth, Tenth, Eleventh, Fourteenth, and Seventeenth affirmative defenses as set forth in the Answer to the Complaint. *This defendant withdraw[s] the Third, Fourth, Sixth, Seventh, Twelfth, Fifteenth and Sixteenth Affirmative Defenses as set forth in its Answer to the Plaintiff's Complaint, without prejudice in the event the plaintiffs introduce evidence at trial that would be applicable to support such withdrawn affirmative defenses.*" (Italics added.) As noted, Caltrans's fourth affirmative defense alleged that its property was not a dangerous condition because "it did not pose a substantial risk of injury" and if there was any risk, it was "minor, trivial, or insignificant."

On July 2, 2012, Caltrans provided responses to a set of special interrogatories, one of which requested the disclosure of facts, documents and witnesses in support of its affirmative defenses. With the caveat that discovery was continuing, Caltrans stated that it could not "specifically state all the facts" supporting its affirmative defenses other than to state that its response to plaintiffs' demand for the production of documents, the complaint, the traffic report, and the depositions of Torres and other witnesses "support this defendant's affirmative defenses that allege the public property was not in a dangerous condition on the date of the subject accident." Caltrans then stated: "In addition, this [d]efendant will not present documents, witnesses to support the contentions in the following Affirmative Defenses as alleged in its Answer to Plaintiff's Complaint: [¶] The Third and Fourth Affirmative Defense. . . ."

On July 12, 2012, plaintiffs filed a motion to compel further discovery responses with respect to defenses and affirmative defenses that Caltrans continued to assert. At that point, the trial was scheduled to begin the following month, on August 6. In

6

opposing the motion to compel, Caltrans reiterated that it had withdrawn eight of its affirmative defenses, argued that its response with respect to each "remaining" affirmative defense was appropriate, and maintained that it had already "produced all responsive documents in its power to produce."

The trial court granted plaintiffs' motion to compel further discovery responses and ordered Caltrans to pay monetary sanctions. Nevertheless, discovery disputes persisted, necessitating a continuance of the original trial date for several months, until January 2013.

## C. Pretrial Rulings

### 1. 2012

On August 1, 2012, before the original trial date was continued, the court heard what turned out to be a first round of motions in limine. One of plaintiffs' motions sought to exclude evidence, testimony or any reference to affirmative defenses that Caltrans abandoned or withdrew during discovery. Plaintiffs argued that Caltrans should be bound by its discovery responses in accordance with policies designed to prevent surprise and gamesmanship. Plaintiffs supported their motion with a declaration from counsel who stated that he had prepared plaintiffs' case in reliance on representations from Caltrans that it had abandoned specified affirmative defenses.

Caltrans opposed this motion on the ground that evidence relevant to the withdrawn affirmative defenses was also relevant to affirmative defenses that Caltrans had not abandoned including, for example, its defense that if there was a dangerous condition, it was created by a "reasonable act" that absolved Caltrans of liability. (See § 835.4.) Caltrans also argued that its decision to withdraw certain affirmative defenses was made "without prejudice in the event that the Plaintiffs[] introduce evidence at trial that would be applicable to support such withdrawn affirmative defenses." Finally, Caltrans argued that it had "agreed" to withdraw certain affirmative defenses in order to expedite the trial, and it would be "fundamentally unfair" to "penalize[]" the state for "its efforts to streamline the trial in this case."

7

At the hearing on in limine motions, the court made a prefatory general observation that motions which did not pertain to specific evidence were not conducive to a pretrial ruling, and would likely be denied without prejudice to raise the issue again during trial. The court explained that it could not make rulings in a vacuum, although it understood that plaintiffs were just trying to protect themselves "against being sandbagged at trial." With respect to the specific motion to exclude evidence pertaining to abandoned affirmative defenses, the court found that the motion was too vague, crediting the defense theory that evidence relevant to an abandoned affirmative offense could also be relevant to a disputed issue. Thus, the court found that it could not make a ruling on this motion unless or until it was asked to consider specific evidence. In the meantime, however, the court assured plaintiffs that it would not "instruct obviously on an affirmative defense that's been withdrawn."

At the August 2012 pretrial hearing, the court also made some preliminary rulings regarding jury instructions. For example, Caltrans proposed giving CACI No. 1123, which sets forth the elements of the affirmative defense of design immunity. (See § 830.6.) Plaintiffs objected on the ground that design immunity was one of the affirmative defenses that Caltrans had withdrawn. Caltrans countered by explaining that when it agreed to plaintiffs' request to withdraw this affirmative defense, it had not yet completed discovery which showed that plaintiffs intended to present evidence of a design defect. The court rejected this explanation, stating: "[T]hat misstates it. They didn't want you to withdraw it. They wanted you to produce the evidence in support of it. . . . What you did in writing was withdraw that defense." In light of that fact, the trial court ruled that the design immunity instruction would not be given.

### 2. 2013

In January 2013, shortly before the rescheduled trial was set to commence, the court conducted a hearing on two motions in limine by Caltrans to preclude plaintiffs from introducing evidence of other accidents on the ground they were not sufficiently similar to Mercado's accident. Plaintiffs argued that similarity was not a requirement because the sheer volume of accidents in that location went to the disputed issues of

8

notice and forseeability. The court rejected this argument and ruled that plaintiffs could not introduce statistical evidence regarding dissimilar accidents on that stretch of highway. However, the court denied Caltrans's request to exclude evidence of an accident that occurred on Interstate 80 that was similar to Mercado's accident on the I-880.

### D. Denial of Defense Motion For Summary Judgment

The January 2013 trial date was vacated for reasons unrelated to this appeal and the trial was postponed until the following year. Meanwhile, in September 2013, Caltrans filed a motion for summary judgment in which it argued, among other things, that it was not liable for damages resulting from Mercado's death because the condition of its property created only a minor, trivial, or insignificant risk of harm. In their opposition, plaintiffs argued that Caltrans waived this issue by withdrawing its fourth affirmative defense during the discovery phase of the litigation.

In a December 2013 order, the trial court found that Caltrans was not entitled to summary judgment on the ground that the risk of injury created by the property was only trivial or insignificant for two independent reasons. First, the court agreed with plaintiffs that "Caltrans has waived its defense on this ground in its discovery responses by refusing to provide discovery responses based on its assertion that it would not be providing any evidence in support of this defense." Second, the court found that, even if it were to reach the merits of this issue, it would find that Caltrans failed to establish that the risk of harm was minor, trivial or insignificant as a matter of law.

### E. Trial Proceedings

#### 1. Trial Theories

The jury trial finally commenced on January 13, 2014. In his opening statement, plaintiffs' counsel outlined the theory that Caltrans made modifications to the concrete barrier which made the freeway dangerous to users and that the dangerous condition was a cause of Mercado's death because his truck would not have travelled into the northbound traffic if the barrier had performed its intended function.

9

In her opening statement, counsel for Caltrans stated that the sole issue was whether the location of the accident was a dangerous condition of public property on the date that the accident occurred. Defense counsel stated when a public entity is involved, the pertinent statute defines a dangerous condition as "a piece of property that poses a substantial risk of injury when it's used carefully." Counsel further stated the evidence would show that the roadway did not meet this definition; that the accident was caused by Mr. Torres and his flat tire; and that nobody anticipated that Caltrans could prevent an 80,000-pound big rig from breaking through a concrete median under these circumstances.

### 2. Evidence Dispute Regarding Withdrawn Affirmative Defenses

As its final trial witness, Caltrans called James Jeffery, a forensic traffic engineer who had been designated as a defense expert on the subject of the construction of the roadway where the accident occurred. Outside the presence of the jury, plaintiffs objected to any testimony by Jeffery on the subject of design immunity because Caltrans had waived this affirmative defense, and the court already ruled that it would not give a design immunity jury instruction.

Caltrans took the position that it had a right to argue design immunity for three reasons. First, counsel stated that the only reason her client withdrew the issue was because of a problem it had responding to plaintiffs' document production requests. But, that problem was subsequently resolved and the pertinent documents had been produced to plaintiffs. Second, since Jeffery was deposed, plaintiffs had notice of his opinions. Third, Jeffery was a proper rebuttal witness because plaintiffs offered evidence that the concrete wall was poorly designed.

After further discussion of the matter, the court ruled that it would not permit Caltrans to resurrect a defense it had previously withdrawn, but that Caltrans could elicit testimony from Jeffery to rebut plaintiffs' evidence that the relevant portion of the concrete barrier was dangerous and defective because Caltrans had modified it with a cap feature that was subsequently disapproved by its own engineers.

Caltrans persisted, arguing that although the legal defense of design immunity may have been withdrawn, the factual question whether Caltrans took action which caused it to lose its design immunity was a question for the jury to decide. Plaintiffs objected again, reiterating that Caltrans had pleaded a design immunity affirmative defense but then withdrew it. Therefore, plaintiffs had not "developed any of the evidence really on this . . . because it wasn't at issue in the case." According to plaintiffs' counsel, "[t]he whole case has been tried without design immunity being an issue."

Deciding to "probe" the issue further, the court queried whether design immunity was actually an affirmative defense, explaining: "Well, that's important to the Court, because as I look at some of these so-called 'affirmative defenses' that the—that Caltrans said it was waiving, I had some questions whether some of them were actually affirmative defenses." As an example, the court referenced the fourth affirmative defense which pertained to the issue whether the property created only a minor or trivial risk of injury. The court stated that it did not understand why Caltrans had made this issue the subject of an affirmative defense when it was plaintiffs who had to prove that the risk created by the condition was not minor or trivial. The court explained this issue was important because it would be error for the court to remove elements from the case that plaintiffs were required to prove, and it was plaintiffs' burden to prove a substantial risk of injury. Plaintiffs' counsel disagreed that this was a concern, reasoning that if a defendant elects to admit an element of a claim, then a plaintiff does not have to prove that element at trial.

After further discussion, everyone appeared to agree that design immunity was an affirmative defense. The court found that Caltrans had "expressly withdrawn" the issue of design immunity and that "it reeks of sand bagging to not put in writing . . . that you intend to resurrect this." The court also found that Caltrans made the representation that it was not going to rely on this defense "because" it "wasn't going to respond to any discovery on this." At the same time, however, plaintiffs had presented evidence to support their theory that the location of the accident was a dangerous condition because Caltrans modified that part of the concrete divider by using a "cap" to raise the height of

11

the wall which undermined its effectiveness as a barrier.  Therefore, the court ruled that Caltrans could elicit testimony from Jeffery about the modification and its effectiveness, but he could not make any reference to the abandoned design immunity defense.

### 3. Jury Instructions

After the close of evidence, during a hearing about jury instructions, the discussion turned to CACI No. 1102, which pertains to the definition of a dangerous condition under section 830(a).  CACI No. 1102 states:

"A 'dangerous condition' is a condition of public property that creates a substantial risk of injury to members of the general public when the property [or adjacent property] is used with reasonable care and in a reasonably foreseeable manner.  A condition that creates only a minor risk of injury is not a dangerous condition.  [Whether the property is in a dangerous condition is to be determined without regard to whether [[name of plaintiff]/ [or] [name of third party]] exercised or failed to exercise reasonable care in [his/her] use of the property.]"

At the hearing, plaintiffs requested that the court modify CACI No. 1102 to delete the following sentence:  "A condition that creates only a minor risk of injury is not a dangerous condition."   Caltrans objected that plaintiffs had the burden of proving this element of the statutory definition.  Plaintiffs responded that Caltrans waived this issue by withdrawing its fourth affirmative defense.  Plaintiffs reminded the court that when they requested a disclosure of all witnesses and evidence that the condition created only a minor risk of injury, the defense conceded the issue so they would not have to give plaintiffs any information.

The trial court repeated its earlier concern (discussed above) that the fourth affirmative defense was not really an affirmative defense, but part of the definition of a dangerous condition which plaintiffs had to prove.  Plaintiffs' counsel agreed that the issue did not need to be characterized as an affirmative defense, but he argued that the issue was nevertheless waived because "during discovery they took the position that they weren't going to give us any evidence or make the claim that this was a trivial matter."

12

After further discussion, the court made the following ruling: "Well, I'm not going to alter this instruction. It's going in its entirety. It's part of what the plaintiffs must prove here. You can argue all you want that they didn't show that this was a minor risk of injury, but it's your burden and you have to prove it and the jury needs to know [that] you have to prove it, so 1102 will go in. . . . [¶] Okay, I think it would be reversible error for the Court to do anything else."

### 4. Closing Arguments

During his closing argument, plaintiffs' counsel began with the dangerous condition requirement, arguing that the concrete barrier created a dangerous condition because its purpose was to prevent southbound vehicles from entering the northbound traffic and it failed to serve that function. Plaintiffs' counsel also addressed numerous other issues, including that the risk of harm was foreseeable because big rigs use this road all the time; the failure of the safety device was a cause of injury; Caltrans failed to test the strength of the barrier; and Caltrans knew that the cap rail that was added to the top of the wall had a tendency to break apart on impact. Plaintiffs' counsel also spent significant time discussing damages, the amount of which was a subject of extensive dispute at trial.

During her closing argument, counsel for Caltrans focused exclusively on the plaintiffs' burden of proving that a dangerous condition was a cause of injury. Counsel emphasized that "dangerous condition" has a very specific meaning in this context because the law limits the state's exposure to liability for accidents on public property, and she urged the jury to find that the location of this accident was not a dangerous condition because it did not pose a substantial risk of harm when used carefully. Instead, counsel argued, the trial evidence established that there was only an "infinitesimal" risk of injury to drivers on this stretch of highway. To support this claim, defense counsel used a large board to perform a mathematical calculation that compared the high volume of traffic to the low volume of accidents over a 10-year period and concluded that the percentage of people getting into accidents at this location was only .000123 percent.

Defense counsel argued further that the state did not have an obligation to create a barrier that would prevent any accident and, in any event, this accident was caused by Torres.  She characterized evidence regarding a modification that Caltrans made to the barrier as irrelevant because that modification did not change the fact that there was only an "infinitesimal risk" of an injury at this location and therefore the public was not exposed to a substantial risk of injury.  Thus, defense counsel argued, the only conclusion supported by the trial evidence was that this location did not pose a substantial risk of injury when used with reasonable care.

### 5.  *Jury Verdict*

The jury was given a three-page special verdict form which began with the question: "Was the property in a dangerous condition at the time of the incident?"  Subsequent questions asked about forseeability, notice, whether the conduct of Caltrans employees was reasonable and other related issues.  The jury found that the property was not in a dangerous condition at the time of the accident, and thus did not answer any of the other questions on the special verdict form.

### F.  The New Trial Order

On April 21, 2014, the trial court granted plaintiffs' motion for a new trial pursuant to Code of Civil Procedure section 657 (CCP section 657), finding that: "Plaintiffs have shown that they were deprived of a fair trial by irregularity in the proceedings of the court, and that their substantial rights were materially affected by accident or surprise, which ordinary prudence could not have guarded against."

In reaching these conclusions, the court acknowledged that the issue of a "trivial risk" is embraced within the dangerous condition element of a section 835 claim.  However in this case, the court found, plaintiffs could "reasonably believe that this issue was not disputed based on Caltrans's waiver of the Fourth Affirmative Defense coupled with its representations that it would not present witnesses or documents to support the contentions in the Fourth Affirmative Defense and that no discovery would be provided on the issue of trivial defect."

14

Furthermore, the court found that plaintiffs' understanding of the extent of the waiver was reinforced by the summary judgment ruling in which the court affirmed plaintiffs' contention that Caltrans had waived its defense that the condition of the property created only a minor, trivial or insignificant risk. Thus, the court concluded, "Plaintiffs could reasonably construe Caltrans's responses to discovery, and the court's ruling on the effect of those responses, as establishing that the issue of trivial risk had been waived and was not at issue."

Finally the court found that plaintiffs had demonstrated they were prejudiced, both with respect to their preparation for trial and in their ability to present evidence to the jury because Caltrans (1) did not produce discovery responsive to the issue of a trivial defect and (2) induced plaintiffs to believe that this issue was waived. The court reasoned that plaintiffs were entitled to know what evidence Caltrans intended to introduce on this issue, and to prepare their case accordingly. The court also credited a declaration from plaintiffs' counsel outlining concrete steps he would have taken had he known the issue was not waived. For example, plaintiffs decided not to offer evidence of a similar accident that occurred on Interstate 80 because they did not want to risk "opening the door" to the issue of trivial risk. Furthermore, if plaintiffs had known this issue was not waived, they would have sought additional pertinent discovery from Caltrans and presented evidence to specifically rebut the calculation that defense counsel performed during closing argument to persuade the jury that the risk of injury was infinitesimal.

### III.

### DISCUSSION

#### A. Legal Principles and Standard of Review

The " 'right to a new trial is purely statutory, and a motion for a new trial can be granted only on one of the grounds enumerated in the statute.' [Citation.]" (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1193.)

Here, as noted in our introduction, one of the bases for the trial court's order was the third ground enumerated in CCP section 657, which states, in part: "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a

15

new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: [¶] . . . 3. Accident or surprise, which ordinary prudence could not have guarded against. . . .” When a new trial is afforded because of an accident or surprise, “[t]he surprise must have detrimentally impacted the party moving for a new trial, but the movant must not have been able to prevent or guard against it by ordinary prudence. [Citation.]” (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 305.)

CCP section 657 states that “[w]hen a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court’s reason or reasons for granting the new trial upon each ground stated.” In this case Caltrans does not dispute that the trial court complied with this statutory requirement. Therefore, “the appropriate standard of judicial review is one that defers to the trial court’s resolution of conflicts in the evidence and inquires only whether the court’s decision was an abuse of discretion. [Citations.]” (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 636; see also *Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 159.)

Under this standard, the trial court’s ruling “will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter. So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside. [Citations.]” (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387.) “Moreover, our review for abuse of discretion extends to all aspects of the trial court’s order granting a new trial, including the trial court’s prejudice ruling. [Citations.] (*Whitlock v. Foster Wheeler, LLC*, *supra*, 160 Cal.App.4th at p. 160.)

**B. The Trial Court Did Not Abuse Its Discretion**

As our summary of the procedural history reflects, the new trial order is supported by evidence that Caltrans adopted a litigation strategy which led plaintiffs to reasonably, but mistakenly, believe that Caltrans did not dispute that the risk of injury at the location

16

of the accident was substantial.  That strategy included decisions to (1) allege as a fourth affirmative defense that the risk of injury was not substantial, and that if there was any risk, it was trivial; (2) withdraw the contentions asserted in this fourth affirmative defense in order to avoid a legal obligation to respond to discovery; and then (3) use the exact same contentions as the keystone of its defense case at trial.  The record supports a finding that both plaintiffs and the trial court were actually, and reasonably, surprised and misled by those decisions.

Caltrans has never explained why it alleged the absence of a substantial risk of injury as an affirmative defense.  However, the record does show that the reason it withdrew that defense was to avoid having to respond to proper requests for discovery. " 'The discovery laws in California are designed to expedite the trial of civil matters by (1) enabling counsel to more quickly and thoroughly obtain evidence and evidentiary leads, and thus to more quickly and effectively prepare for trial, and (2) enabling counsel to 'set at rest' issues that are not genuinely disputed. [Citations.]' [Citation.]  A party may be required to disclose whether or not he will press an issue in the case. [Citation.]" (*Campain v. Safeway Stores, Inc.* (1972) 29 Cal.App.3d 362, 366 (*Campain*).)  Here, as the trial court found, Caltrans's discovery responses were reasonably interpreted by plaintiffs as a disclosure that it would not press the issue of substantial risk of injury.

*Campain*, *supra*, 29 Cal.App.3d 362 is instructive.  In that personal injury action against Safeway, plaintiff provided discovery responses in which she indicated that she was not making any claim for loss of wages as a result of the accident.  (*Id.* at p. 365.)  Later, plaintiff was allowed to amend her complaint to allege additional damages that were previously unseen, but neither her motion papers nor counsel's argument made any references to lost wages.  However, at trial plaintiff offered evidence regarding her "prospective employment at the time of the accident and her plans for future employment." (*Ibid.*)  Initially, the trial court sustained Safeway's objection that loss of earnings and future earnings were no longer issues in the case, but it subsequently reversed its ruling and admitted the evidence.  The jury returned a verdict for plaintiff,

17

but the appellate court reversed the judgment and remanded the case for a new trial on the issues of damages.

The *Campain* court found that "Safeway acted reasonably in relying on pretrial discovery in the preparation of its case for trial," and that plaintiff "had apparently 'set at rest' the issue of loss of earnings and future earnings." (*Campain*, *supra*, 29 Cal.App.3d at p. 366.) The court also found that Safeway suffered prejudice because plaintiff effectively used the evidence on this subject in her final argument to the jury on the amount of damages. Because Safeway was genuinely surprised and thus unprepared to dispute the plaintiff's claim for loss of earnings and future earnings, it was prejudiced in its defense of the case at trial. Thus, the court concluded that Safeway was entitled to "further discovery and a new trial." (*Ibid.*)

The present case is the mirror image and materially indistinguishable from the situation that occurred in *Campain*, *supra*, 29 Cal.App.3d 362. Here, plaintiffs acted reasonably by relying on pretrial discovery in which defendant Caltrans appeared to set to rest the issue of substantial risk. As a result, plaintiffs understandably had not prepared to prove this issue affirmatively at trial. As a result, plaintiffs were not only genuinely surprised when Caltrans resurrected the issue at trial, they were prejudiced because Caltrans made substantial risk the focus of their case notwithstanding that plaintiffs reasonably believed the issue had been waived.

Caltrans argues that any belief by plaintiffs that the defense had conceded the issue of substantial risk "would have been patently unreasonable" because Caltrans "fervently contested the issue from beginning to end." To support this claim, Caltrans offers a summary of the procedural history of this case that is not only misleading but that literally ignores the actions Caltrans took which formed the basis for the ruling that plaintiffs were entitled to a new trial.

Furthermore, the question whether plaintiffs were reasonably and genuinely surprised by the events that unfolded at trial depended, in large part, on percipient observations only the trial judge could make. "In such situations, '[e]ven the most comprehensive study of a trial court record cannot replace the immediacy of being

18

present at the trial, watching and hearing as the evidence unfolds.' [Citation.]" (*McCoy v. Pacific Maritime Assn.*, *supra*, 216 Cal.App.4th at pp. 305-306.) Here, the record supports the trial court's discretionary ruling that the litigation strategy employed by Caltrans created an irregularity in the proceedings which resulted in unfair surprise and prejudiced plaintiffs in their ability to present their case to the jury.

### C. The Order is Not Based on Legal Error

Caltrans contends that the trial court abused its discretion because its ruling was based on an error of law. (Citing *Neal v. Montgomery Elevator Co.* (1992) 7 Cal.App.4th 1194, 1199-1200 (*Neal*).) According to Caltrans, the trial court committed legal error by conflating sections 830(a) and 830.2, and failing to understand their distinct functions.

Caltrans's contention that the trial court "ignored the meaningful distinction and harmony between sections 830(a) and 830.2" is difficult to decipher. To the extent Caltrans is arguing that these statutes are meant to be read together, we agree. Section 830(a) defines a dangerous condition as one that "creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury" when used with due care and in a reasonably foreseeable manner. Section 830.2 amplifies this statutory definition by providing that a condition is not a dangerous condition under section 830(a) when a judicial determination can be made as a matter of law that the risk created by the condition is "of such a minor, trivial or insignificant nature . . . that no reasonable person would conclude that the condition created a substantial risk of injury."

When read together, these provisions clarify that there are cases in which the determination whether a risk poses a substantial risk of injury can be made as a matter of law. As stated in the Law Revision Commission Comments accompanying section 830.2, this rule "merely declares the rule that would be applied in any event when a court rules upon the sufficiency of the evidence" to support a dangerous condition finding. In this case, sufficiency of the evidence had nothing to do with the new trial order. Nothing in that order suggests that the trial court misunderstood the relationship between these statutes.

Caltrans intimates that the trial court misapplied these two statutes by concluding that a trivial risk within the meaning of section 830.2 is synonymous with a nonsubstantial risk under section 830(a).[3] According to Caltrans, the concepts are not synonymous because the law in dangerous condition cases establishes a "sliding scale" for assessing whether a risk of injury exposes the state to potential liability, with trivial risk near the bottom and substantial risk toward the top. Thus, Caltrans posits, even when a court cannot make a determination that a risk is trivial under section 830.2, "it does not follow that the risk necessarily rises to the level of 'substantial,' or that a plaintiff is absolved from having to prove that element."

Caltrans misapprehends the new trial order. Caltrans is correct that a defendant's failure to prove that a risk of injury is trivial as a matter of law does not necessarily constitute a concession that the risk was substantial. But that is not the situation that resulted in a new trial order in this case. Here Caltrans filed a fourth affirmative defense in which it explicitly alleged that the condition of the highway "did not pose a substantial risk of injury, *and*, if there was any risk involved, it was merely a minor, trivial, or insignificant risk." (Italics added.) Later, Caltrans withdrew this defense for the purpose of avoiding having to respond to discovery and pursuant to an express representation that it would not present documents or witnesses "to support the contentions" in this withdrawn affirmative defense. It was this litigation conduct, not any failure to prove trivial risk as a matter of law, which led to the decision to order a new trial.

Thus, in granting plaintiffs a new trial, the trial court did not make any substantive ruling about whether a concession that a risk is not trivial is equivalent to a concession that a risk is substantial. Instead, the court granted plaintiffs a new trial based on evidence that Caltrans engaged in conduct which led plaintiffs to reasonably believe that Caltrans did not dispute that the location of the accident created a substantial risk of injury.

---

[3] In their opening brief on appeal, Caltrans argues that the trial court "construed 'trivial' and 'substantial' risk as synonymous." We assume that Caltrans means to say is the court treated "trivial" and "not substantial" as synonymous concepts.

20

In order to obtain a reversal of a new trial order because of a legal error, Caltrans would have to show that the trial court based its order " 'exclusively upon an erroneous concept of legal principles applicable to the cause . . . .' [Citation.]" (*Neal*, *supra*, 7 Cal.App.4th at pp. 1199-1120.) In this case, the new trial order was not based exclusively on the substantive law pertaining to substantial risks of injury. Rather, the trial court granted plaintiffs a new trial because of a surprise, which plaintiffs could not have reasonably guarded against, that resulted from tactical decisions by Caltrans during the pleading and discovery phases of this litigation.

### D. Prejudice

Caltrans argues that even if there is evidence of accident or surprise, the trial court was "enjoined" from granting plaintiffs a new trial because there was no prejudice. To support this claim, Caltrans argues (1) it already produced all relevant discovery regarding substantial risk; (2) plaintiffs introduced evidence on this issue at trial; (3) to the extent plaintiffs had additional evidence they did not offer, that was their choice, and (4) "it was error for the trial court to reward [plaintiffs] for choosing to forego that evidence and speculate on a favorable verdict instead."

Putting aside the fact there is no way for us to determine whether Caltrans has already produced all evidence relevant the issue of substantial risk, its representation to that effect is beside the point. The record confirms that Caltrans refused to provide coherent responses to discovery requests about this specific issue. Plaintiffs were entitled to those answers in order to prepare for trial. By withdrawing contentions that it previously made in its fourth affirmative defense for the specific purpose of avoiding a discovery obligation and then using those exact contentions as the basis for its defense at trial, Caltrans not only misled plaintiffs about its own trial strategy, it prevented them from preparing and presenting their best case to the jury.

Second, whether evidence that was elicited at trial was relevant to the substantial risk issue is also beside the point. As Caltrans itself repeatedly argued in the lower court, evidence regarding the condition of this concrete barrier was relevant to more than one issue. The point here is that plaintiffs did not have a fair opportunity to show how the

21

evidence that was introduced at trial supported its theory that the risk of harm was substantial because it reasonably believed that Caltrans would not dispute that issue.

Finally, we disagree with Caltrans that the trial court rewarded plaintiffs, or that plaintiffs made an informed "choice" not to introduce relevant evidence like, for example, evidence of the similar big rig accident that occurred on the Interstate 80 freeway.  As discussed in our procedural summary, Caltrans repeatedly warned plaintiffs that it would resurrect issues that it had conceded "without prejudice" if plaintiffs opened the door by raising those issues at trial.  The record supports the conclusion that the threat of reintroducing issues thought by plaintiffs to have been conceded materially inhibited their presentation of evidence at trial.  Thus, plaintiffs' so-called choice about how to handle the substantial risk issue was inextricably intertwined with its reasonable though mistaken belief that Caltrans would not dispute that issue at trial by arguing that the risk of injury was trivial.

## IV.
## DISPOSITION

The order granting plaintiffs a new trial is affirmed.  Plaintiffs are awarded costs on appeal.

_____
RUVOLO, P. J.

We concur:


_____
RIVERA, J.


_____
STREETER, J.


A142173, *Mercado v. Calif. Dept. of Transportation*